**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

WAG ACQUISITION, L.L.C.,

                Plaintiff,

     v.

TECHNIUS LTD.,

                Defendant.

Case No. 2:24-cv-00714

**RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO**
**STRIKE PORTIONS OF XIONG EXPERT REPORTS [DKT NO. 65]**

## TABLE OF CONTENTS

I.    LEGAL STANDARD ............................................................................................ 1

II.    DR. XIONG'S NON-INFRINGEMENT REPORT IS PROPER ............................... 3

    A.    DR. XIONG'S OPINIONS ARE FULLY SUPPORTED AND CAN BE TESTED ON CROSS-EXAMINATION ...................................................................................... 4

    B.    DR. XIONG PROPERLY APPLIED THE PRELIMINARY CLAIM CONSTRUCTION ORDER ...................................................................................... 9

III.    DR. XIONG'S INVALIDITY REPORT IS PROPER ................................................ 11

    A.    THE INVALIDITY CONTENTIONS WERE PROPERLY DISCLOSED. ......... 11

    B.    INDEFINITENESS ISSUE IS MOOT ............................................................... 12

    C.    ALL INVALIDITY GROUNDS ARE FULLY PRESENTED ............................ 13

IV.    CONCLUSION ..................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*Apple Inc. v. Motorola, Inc.,*
  757 F.3d 1286 (Fed. Cir. 2014) ................................................................................................ 3

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
  509 U.S. 579 (1993) ................................................................................................... 1, 2, 3, 4

*First Nat. Bank of Louisville v. Lustig,*
  96 F.3d 1554 (5th Cir. 1996) ................................................................................................... 5

*i4i Ltd. P'ship v. Microsoft Corp.,*
  598 F.3d 831 (Fed. Cir. 2010) ............................................................................................ 3, 4

*Johnson v. Arkema, Inc.,*
  685 F. 3d 452 (Fifth Cir. 2012) .............................................................................................. 4

*Kumho Tire Co. v. Carmichael,*
  526 U.S. 137 (1999) .................................................................................................................. 2

*Micro Chem., Inc. v. Lextron, Inc.,*
  317 F.3d 1387 (Fed. Cir. 2003) ........................................................................................... 2, 3

*Pipitone v. Biomatrix, Inc.,*
  288 F.3d 239 (5th Cir. 2002) ................................................................................................... 3

*Puga v. RCX Solutions, Inc.,*
  922 F. 3d 285 (5th Cir. 2019) .................................................................................................. 2

*Robert Bosch LLC v. Westport Fuel Systems Canada, Inc.,*
  No. 2:23-cv-00038-JRG-RSP, ECF 321 (E.D. Tex. March 3, 2026) ...................................... 10

*Smart Path Connections, LLC, v. Nokia of America Corp.,*
  No. 2:22-cv-00296, ECF No. 260, 2024 WL 1096138 (E. D. Tex. Mar. 13, 2024) .................. 5

*Sundance, Inc. v. DeMonte Fabricating Ltd.,*
  550 F.3d 1356 (Fed. Cir. 2008) ............................................................................................... 2

*Synqor, Inc. v. Vicor Corporation,*
  No. 2:14-cv-00287-RWS-JBB, ECF 642 (E.D. Tex. Oct. 7, 2022) .......................................... 6

*Uniloc USA, INC. v. Samsung Electronics America, Inc.,*
  No. 2:17-CV-00651-JRG, 2019 WL 2267212 (E.D. Tex. May 28, 2019) ................................. 4

*United States v. Valencia,*
  600 F.3d 389 (5th Cir. 2010) ................................................................................................... 2

*Verizon Services Corp. v. Cox Fibernet Va., Inc.*,
  602 F.3d 1325 (Fed. Cir. 2010) ................................................................................................. 6

**Statutes**

35 U.S.C. § 282(c) ...................................................................................................................... 12

**Rules**

Fed. R. Evid. 702 ......................................................................................................................... 3

Defendant Technius Ltd. ("Technius") hereby opposes and respectfully asks this Court to **DENY** Plaintiff's Motion to Strike Portions Of Expert Reports Of Defendant's Technical Expert Zixiang Xiong (Dkt. No. 65) for the reasons set forth below.[1]

Plaintiff's motion raises only Plaintiff's opposition to Dr. Xiong's non-infringement position, the motion is not a challenge to qualifications or analysis procedures based on the *Daubert* standard. While it is not surprising that the Plaintiff disagrees with Dr. Xiong's opinions, disagreement is not a valid basis for striking or excluding any portion of the Xiong non-infringement report. Plaintiff will have the opportunity to conduct vigorous cross-examination of Dr. Xiong, present contrary evidence, and seek careful instruction on the issues at trial — these are the traditional and appropriate means of attacking admissible evidence. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993).

With respect to the invalidity report, Plaintiff's terse arguments amount to complaints over the organization of the report, rather than with any substantive defect in the testimony. The invalidity report properly raises and addresses each of the claim elements. And while Plaintiff is free to challenge Dr. Xiong's conclusions at trial, there is no basis for excluding his opinions under *Daubert* or Rule 702.

## I.      LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the

---

[1] The Motion [Dkt. 65] was filed under seal. The redacted Motion was filed as Dkt. 69.

principles and methods to the facts of the case." Fed. R. Evid. 702.  A trial court is "charged with a 'gatekeeping role,' the objective of which is to ensure that expert testimony admitted into evidence is both reliable and relevant." *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1360 (Fed. Cir. 2008).

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony.  *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993).  District courts are accorded broad discretion in making Rule 702 determinations of admissibility.  *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable").  Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial.  *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, "the court's role under Rule 702 is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role— the court's role is limited to ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue so that it is appropriate for the jury's consideration." *Puga v. RCX Solutions, Inc.*, 922 F. 3d 285, 294 (5th Cir. 2019); citing *Micro Chem., Inc. v. Lextron, Inc.,* 317 F.3d 1387, 1391-92 (Fed. Cir. 2003).

"A [district] judge must be cautious not to overstep its gatekeeping role and weigh facts, evaluate the correctness of conclusions, impose its own preferred methodology, or judge credibility, including the credibility of one expert over another," *Apple Inc. v. Motorola, Inc.,* 757 F.3d 1286, 1314 (Fed. Cir. 2014). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 596 (1993); *see also i4i Ltd. P'ship v. Microsoft Corp.,* 598 F.3d 831, 854 (Fed. Cir. 2010) ("*Daubert* and Rule 702 are safeguards against unreliable or irrelevant opinions, not guarantees of correctness."); *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony." ); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note).

## II.    DR. XIONG'S NON-INFRINGEMENT REPORT IS PROPER

Plaintiff's arguments regarding what Dr. Xiong considered and how he interpreted the evidence he considered go to the weight rather than the admissibility of the opinions.  Plaintiff's arguments reflect factual disagreements about the evidence or methodology disputes that are appropriate for cross-examination. *See Micro Chem.,* 317 F. 3d at 1392 ("[T]he trial court properly did not rule inadmissible [the expert's] testimony simply because it was based on Micro Chemical's version of the contested facts. The defendants had ample opportunity to rebut [the

expert's] theory during cross-examination."); *see also Uniloc USA, INC. v. Samsung Electronics America, Inc.*, No. 2:17-CV-00651-JRG, 2019 WL 2267212 (E.D. Tex. May 28, 2019) (interpretation of evidence goes to weight rather than admissibility.)

It is apparent that the entire Motion is based not on the propriety or reliability of the evidence, but rather on whether Dr. Xiong's testimony is *correct.  Johnson v. Arkema, Inc.,* 685 F. 3d 452, 459 (Fifth Cir. 2012); *see also i4i Ltd.,* 598 F.3d at 854 ("*Daubert* and Rule 702 are safeguards against unreliable or irrelevant opinions, not guarantees of correctness."). In fact, the evidence relied on by Dr. Xiong is, for the most part, the same evidence that Plaintiff's expert relied on in his infringement report, supplemented by additional conversations with Defendant's fact witnesses.  (See discussion, infra.)  The court's "focus, of course, must be solely on principles and methodology, *not* on the conclusions that they generate." *Daubert,* 509 U.S. at 595 (emphasis added).

### A.  DR. XIONG'S OPINIONS ARE FULLY SUPPORTED AND CAN BE TESTED ON CROSS-EXAMINATION

Plaintiff's challenge to Dr. Xiong's opinions regarding the WebRTC buffer are based on disagreements as to the facts, and are not a proper basis for exclusion under Daubert.  In particular, Plaintiff argues that Dr. Xiong's non-infringement report "do[es] not, anywhere, reference contents of Technius source code, configuration files, interrogatory responses, or any other documents, to support the opinions" he gives regarding Technius's WebRTC operations. (Motion at 5.)  However, Dr. Xiong specifically references conversations with the Technius engineers who are knowledgeable regarding the configuration of the "buffer-less" ingestion approach used by Technius.  (Dkt. 69-3, Eh. B (Xiong Noninfringement Rpt.) At ¶41.)

The crux of Plaintiff's argument is that Defendant's expert relied on conversations that

were not developed or explored during the depositions of Defendant's fact witnesses.  However, no facts were ever withheld from Plaintiff's counsel.

Plaintiff's failure to properly explore the relevant facts during fact depositions is not a basis for striking the expert testimony.  A discussion with a knowledgeable employee of the Defendant is a standard example of testimony that is a proper basis for expert testimony.  *First Nat. Bank of Louisville v. Lustig*, 96 F.3d 1554, 1576 (5th Cir. 1996) ("Experts may rely on hearsay evidence in forming their opinions.").  Of course, if the expert attempts to repeat the hearsay to the jury, a proper objection may be urged.  Plaintiff's concern with the deponent's underlying level of knowledge on the issue at hand is best explored on cross-examination.  *See Smart Path Connections, LLC, v. Nokia of America Corp.*, No. 2:22-cv-00296, ECF No. 260, 2024 WL 1096138 (E. D. Tex. Mar. 13, 2024).  As with all of Plaintiff's *Daubert* arguments, rigorous cross-examination – not exclusion – is the appropriate solution.

Plaintiff further criticism that Mr. Mikhaelis did not provide "Technius's technical basis for asserting non-infringement" at deposition is also legally improper.  (Motion at p. 7.)  Mr. Mikhaelis is a Technius employee who was designated to testify regarding facts.  The particular line of questions asked of him at deposition was as follows:

```
Q. Oh, the question is, do -- do you – do you -- does
-- does Technius dispute that its services are
different from what is in the asserted patent claims?

MR. ZITO: Objection. Asking him for a legal opinion
and asking him for a position of a party.

*  *  *

Q. All right. But what is the technical basis on which
you say you don't infringe?

A. We used an open-source technology which is -- which
is in free access and use.
```

Q. Okay. Anything else?

A. Well, I can't say anything else.

Q. You can or cannot?

A. I cannot. Cannot say anything else.

(Dkt. No. 69-9 (Mikhaelis Dep. Tr.) at 116:15 – 118:3.)  Plaintiff was asking for a legal conclusion regarding non-infringement – something that Mr. Mikhaelis could not answer as a fact witness.  The question called for a legal conclusion comparing the accused instrumentalities to the claims of the patents.  Plaintiff did not ask targeted questions to elicit factual responses that might be relevant to infringement.  Instead, Plaintiff asked improper questions attempting to elicit improper opinion testimony and legal conclusions.

A fact witness is not charged with providing a "basis for asserting non-infringement" even if asked that topic at a deposition.  Lay opinion testimony has generally not been allowed on how the accused product compares to the patent or whether the patent is infringed.  *See e.g., Verizon Services Corp. v. Cox Fibernet Va., Inc.*, 602 F.3d 1325, 1339-40 (Fed. Cir. 2010) ("[T]he district court properly allowed testimony from the witnesses about the patents they invented based on their personal knowledge, and properly excluded these same witnesses from providing expert testimony on invalidity for which they had not previously provided expert reports or been qualified as an expert."); see also, *Synqor, Inc. v. Vicor Corporation*, No. 2:14-cv-00287-RWS-JBB, ECF 642 at *3 (E.D. Tex. Oct. 7, 2022) ("[lay witness] may not provide any invalidity or non-infringement analysis, [but] is allowed to testify as to issues within his personal knowledge…. regarding the design and development process of [accused] products.")

Rather, a Defendant's engineer fact witness can testify about, for example, whether the Defendant performs a specific action, whether an activity is performed by Defendant in a

particular way, or whether the Defendant has a certain system architecture or certain components, and whether those components function in certain ways.  Those are all fact issues that to which Mr. Mikhaelis would have been able to testify, had those questions been asked at deposition.  That Plaintiff failed to ask those proper questions at deposition does not prohibit Defendant's expert from taking the initiative to ask those questions in preparation for his report.  Nevertheless, despite having failed to properly probe the subject during discovery, Plaintiff will still have a chance to ask those questions of Mr. Mikhaelis and Dr. Xiong at trial.

Plaintiff further argues that Dr. Xiong's focus on "ingestion" is not the same as "egress," which Plaintiff claims to be the relevant consideration.  (Motion at p. 6.)  Again, this is a topic that is ripe for cross-examination.  If Plaintiff wishes to point out to the jury that Dr. Xiong's opinion is incorrect, the mechanism to do so is at trial under questioning.  There, the opinion can be probed, and the fact finders can make a determination whether Dr. Xiong's expertise is persuasive.

The Motion has no basis for asserting that Dr. Xiong did not explicitly consider Defendant's source code, configuration files, or PCAP files generated by Plaintiff, or that he did not discuss this evidence with Technius's engineers in refuting Mr. Teruya's analysis.  (Motion at 7, 9.)  In fact, Plaintiff concedes this argument by stating that it "does not appear" that Dr. Xiong made these inquires (*id*. at 7) and that Dr. Xiong does not "report anything" or "mention" the PCAP file by name in his report.  (Id. at 9.)  Plaintiff does not (and cannot) show that Dr. Xiong actually disregarded evidence.

Plaintiff cannot point to any evidence that affirmatively states that Dr. Xiong did not consider evidence or properly consider anything while forming his opinion.  To the contrary, the list of references cited explicitly states that he did review *everything* submitted by Mr. Teruya

(thus including all source code and config files cited by Mr. Teruya), which includes the PCAP file, and that he *did* have conversations with Technius personnel to get more information on what he reviewed:

```
"63.   The materials I considered or reviewed is
provided are all of the materials  indicated in Mr.
Teruya's report. I have also considered the materials
cited in the body and footnotes of this report. In
addition, I spoke with Mr. Ilya Mikhaelis, who
provided additional information regarding the Technius
systems."
```

(Dkt. No. 69-3 (Xiong Non-infringement Rpt.) at ¶63.)

And even if it were true that Dr. Xiong did not review the source code or PCAP data, and did not discuss this information with a knowledgeable Technius engineer (despite his testimony that he did), this would go to the weight to be afforded, not admissibility.  Plaintiff should expose this at trial and let the jury decide whether there was some important fact that Dr. Xiong did not consider in preparing his report.

In refuting Mr. Teruya's opinion, Dr. Xiong is not limited to only what Mr. Teruya considered – especially where, as here, Mr. Teruya's own methodology was lacking.  Dr. Xiong opted to focus his report on a visual inspection of the data that also shows non-infringement, in his opinion.  Again, Plaintiff is free to examine Dr. Xiong about whether his testing was accurate and whether other data relied on more heavily by Mr. Teruya refutes his opinion.  Simply relying more explicitly on a different set of data is neither improper nor a valid basis for exclusion.

Plaintiff makes additional unsupported arguments on page 9 of the Motion, where it argues that Dr. Xiong relied on "an unidentified third person's opinion" regarding when Defendant began using LL-HLS.  (Motion at 9.)  Mr. Xiong stated that he had discussions with Technius personnel regarding Technius's use of LL-HLS and WebRTC.  (See, e.g. Dkt. No. 69-3

(Xiong Non-infringement Rpt.) at ¶ 88.)  And, as Plaintiff acknowledges, the verified

interrogatory responses indicate that Defendant began implementing a **LL-HLS** solution in

October 2021, which is approximately six months *after* two of the patents in suit expired.  (See,

Dkt. No. 69-6 (Resp. to Rog. 16) at 6.)  Dr. Xiong's testimony is therefore accurate in stating his

understanding as to the timing in relation to expiration of at least two of the patents in suit.

Whether any aspect of Dr. Xiong's testimony on the matter is incomplete (i.e., timing with

respect to expiration of the third patent in suit) is a topic that will be presented at trial by fact

witnesses.  The Plaintiff can cross-examine the fact witness sponsors of that information, and can

further cross-examine Dr. Xiong's understanding based on that testimony.

## B.  DR. XIONG PROPERLY APPLIED THE PRELIMINARY CLAIM CONSTRUCTION ORDER

Plaintiff also errs in arguing that Dr. Xiong did not apply the proper claim constructions

in forming his opinion.  First, Dr. Xiong explicitly states that the *did* consider and apply the

court's preliminary[2] claim constructions:

```
Q All right. Dr. Xiong, you testified already
confirming that you have applied the court's

tentative claim construction. Do you remember
testifying to that?

A That's what I stated in paragraph 5 of my non-
infringement report

Q Okay. So is it correct to say that it's not your
intention at this time to add any further

requirements beyond what the court stated?

MR. ZITO: Objection, misstates.
```

---

[2] At the time of his report (March 19, 2026) and deposition (April 22, 2026), the Court had not yet issued the final claim construction order.  (Dkt. No. 68,  April 30, 2026).

> A I'm not planning to do that, first of all,
>
> Mr. Abramson. Q Okay. Thank you.

(Dkt. No. 69-5 (Xiong Dep. Tr.) at 37:19 – 38:6.)

In fact, Plaintiff's argument is not actually that Dr. Xiong has improperly applied the Court's claim constructions, but that Dr. Xiong is applying his understanding of terms as they were construed, or as to aspects of the claims that were not construed.  (Motion at 7.)  Plaintiff concedes that Dr. Xiong's testimony was about terms for which "Neither party requested a construction" and which were not addressed in the Preliminary Constructions.  (*Id*.)  Specifically, Plaintiff disagrees with Dr. Xiong's interpretation over what it means to "send" data as set forth in the claims, where "send" was not specifically addressed in isolation.  As Plaintiff acknowledges, in such a case, the "general approach is to use plain and ordinary meaning for unconstrued claims."

However, Plaintiff errs in asserting that Dr. Xiong's opinions must be excluded because Plaintiff believes that the "plain and ordinary meaning" of "send" is something different than what Dr. Xiong interprets it to be.  Courts have routinely acknowledged that experts are permitted (or even expected) to opinion as to how a person of ordinary skill would apply the court's construction, or how the person of ordinary skill would understand terms that were not explicitly construed by the Court.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) ("The ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention."); *see also Robert Bosch LLC v. Westport Fuel Systems Canada, Inc.,* No. 2:23-cv-00038-JRG-RSP, ECF 321 at *9 (E.D. Tex. March 3, 2026) ("While claim construction is a role reserved to the court, experts may opine as to how a person of ordinary skill would apply the court's construction, or opine as to

whether a product practices the patent.") And where, as here, the court did not construe a claim term, it remains within the expert's realm to provide an opinion as to what the "plain and ordinary meaning" is as applied to the claims and accused instrumentalities. This is what Dr. Xiong has done.

The Motion spends several paragraphs arguing that Dr. Xiong's interpretation of "send" is wrong, and thus the accused instrumentalities must infringe, although Dr. Xiong opines that they don't infringe. (See, e.g., Motion at 8.) Alternatively, Plaintiff argues that Dr. Xiong's interpretation goes beyond the plain and ordinary meaning, despite no statement from the Court that the constructions necessarily exclude Dr. Xiong's application of the term in the context of the accused instrumentalities. (*Id*.) While these topics might have been properly brought on a motion for summary judgment or summary adjudication, they are not proper arguments for exclusion under *Daubert*. The proper course is for Plaintiff to challenge Dr. Xiong on cross as to his interpretation. (Something that Plaintiff chose not to do at deposition.)

## III.   DR. XIONG'S INVALIDITY REPORT IS PROPER

### A.  THE INVALIDITY CONTENTIONS WERE PROPERLY DISCLOSED.

Defendant properly disclosed its invalidity contentions . Although a small portion of the supplemental references were disclosed with Dr. Xiong's invalidity report, those references did not come to the attention of the Defendant until late in the discovery process, as a result of evidence and arguments raised during discovery. Nevertheless, the disclosure of these new references came at the close of discovery (March 19, 2026) and well in advance of the statutory deadline to provide invalidity arguments set forth in 35 U.S.C. § 282.

As set forth in Section 282, a party asserting invalidity "shall give notice in the pleadings or otherwise in writing to the adverse party at least thirty days before the trial of the country,

number, date, and name of the patentee of any patent, the title, date, and page numbers of any publication to be relied upon as anticipation of the patent in suit." 35 U.S.C. § 282(c). Defendant not only provided identification well before the 30 day statutory deadline, but also provided an element-by-element analysis of how the invalidity references apply to the patents in suit.  This information is included in Defendant's expert report and is addressed by Plaintiff in Plaintiff's rebuttal report regarding validity.

Although Plaintiff complains that new references were included in the expert invalidity report, Plaintiff has shown no prejudice from the inclusion of the additional charted references. Plaintiff had a full and fair opportunity to respond to the expert report with its April 8 rebuttal report.  The Teruya rebuttal report addressed each of the "new" references fully.  Plaintiff also did not question Defendant's expert witness about the applicability of *any* of the references in the report, whether they were the so-called "new" references, or the references that were disclosed in the initial invalidity contentions in May of 2025.  Thus, Plaintiff has not shown that there is any prejudice in considering the additional references.

Nor do the six additional references add any novel invalidity theories to the case that had never before been raised.  The additional references serve to flesh out invalidity theories that were first raised with the initial invalidity contentions.

### B.  INDEFINITENESS ISSUE IS MOOT

Dr. Xiong's invalidity report raises the issue of indefiniteness in the context of positions that were raised in claim construction, but that had not yet been decided on by the Court.  The invalidity report was served on March 19, 2026, while the Markman Order did not issue until April 30, 2026 – one day after Plaintiff's opening Daubert brief was filed.  Thus, at the time, indefiniteness was an open issue, albeit one that was likely to be resolved with the Court's final

claim construction order.  The indefiniteness issue has now been superseded by the Court's claim construction ruling.  The issue is therefore moot, and neither Defendant nor Dr. Xiong will be raising indefiniteness at trial.

### C.  ALL INVALIDITY GROUNDS ARE FULLY PRESENTED

Plaintiff's argument that the invalidity contentions are "facially insufficient" is based on a misrepresentation of the claim charts and invalidity report.  (Motion at 12.)

It is not true that element 1.B of the '611 Patent (reciting initial streaming elements "sufficient for the user system to begin play[back] ***while the user buffer continues to fill***") was improperly addressed.  In fact, element 1.B was addressed directly in every one of the claim charts (Appendices A-K and  Z-CC) for the '611 Patent.  What is true is that the left hand side of the claim charts all contained the same inadvertent error in pasting the claim language that omitted a portion of the claim language.  Specifically, the highlighted portion was unintentionally omitted from the left hand side of the charts for element 1.B:

```
configuring the initial streaming media elements so
that the amount of said initial elements, and said
initial sending rate, are sufficient for the user
system to begin playing back the streaming media while
the user buffer continues to fill;
```

However, it is also true that the right-hand side of each chart fully addressed the teaching of the user buffer continuing to fill.  See, e.g. attached Exhibit A (Exhibit A to Xiong Invalidity Report, Zheng '611 chart) at p. 8 and attached Exhibit B (Exhibit A to Xiong Invalidity Report, Chen/Chen FH '611 chart) at pp. 6-7).  Moreover, the same element with the same language appears in claim element 8.b of the '611 Patent (without the inadvertently omitted text), and includes the same identification of the teachings of the user buffer.

Thus, Plaintiff's argument that the element is "materially misrepresented" in the claim charts is plainly untrue and should be dismissed. Although there is a scrivener's error in copying the claim language into a chart Dr. Xiong nevertheless directly addresses the substance of the inadvertently omitted claim element.

It is also not true that Defendant addresses element 1.B of the '611 Patent only with respect to the Zheng reference. In fact, Dr. Xiong points out that the in addition to Zheng, the combination of Chen and Chen FH fully teach every element of claim 1 of the '611 Patent. Thus, in every chart that uses the combination of Chen and Chen FH, element 1.B is fully addressed and the teaching of the user buffer is found in the combination.

Dr. Xiong then adds a sentence augmenting this Chen-Chen FH position by stating that *if* Chen and Chen FH do not fully disclose element 1.B of the '611 patent, then adding Zheng to the combination does provide the teaching:

> **To the extent that Chen, Chen File History and Willebeek are not deemed to disclose** the "sending initial streaming media elements to the user system at an initial sending rate more rapid than the playback rate," and "configuring the initial streaming media elements so that the amount of said initial elements, and said initial sending rate, are sufficient for the user system to begin playing back the streaming media while the user buffer continues to fill," **they are disclosed in Zheng**.

(Dkt. 69-2 (Xiong Invalidity Report) at p. 35 (emphasis added).) Dr. Xiong's clearly stated opinion is that **all** of the elements of claim 1 of the '611 Patent are taught in Zheng, and **all** of the elements are taught in the Chen-Chen FH combination.

What is left of Plaintiff's argument is simply a dispute as to whether Dr. Xiong's interpretation of the prior art is correct. Plaintiff is clearly arguing about correctness on page 12

*Oppo. to Motion to Strike*
*Testimony of Dr. Xiong*

14

Case No. 2:24-cv-00714

of the Motion where it argues that Dr. Xiong doesn't provide argument for the element. As always, *correctness* is an issue to be raised at trial, not at the Daubert stage.

Finally, Plaintiff argues that Dr. Xiong's opinion with respect to claim 7 of the '839 Patent is deficient because the charts address only dependent claim 7, without explicitly addressing independent claim 1. Independent claim 1 has already been held invalid. Thus, the only argument that remains is whether the particular elements found in claim 7 of the '839 Patent are disclosed in the prior art.

The invalidity report directly addresses those elements, including via the claim charts W, X, and Y. If invalid claim 1 is not separately addressed, this does not make the opinion as to the elements in claim 7 unreliable, as Plaintiff suggests. Should Plaintiff choose to argue that the Hooper, RFC, and Fuller references don't disclose the elements of claim 7, Plaintiff should do so at trial. But in any case, reliability of the opinion as to the elements in claim 7 is not at issue.

## IV.    CONCLUSION

Plaintiff's Motion to exclude does not identify any deficiencies that call for exclusion under Rule 702 or under Daubert and its progeny. Instead, the Motion contests the correctness of Dr. Xiong's opinions. But the Court's role at the Daubert stage is not to test correctness; that is reserved for the jury after cross-examination at trial. Accordingly, Defendant asks that the Court deny the Motion in its entirety and allow Dr. Xiong's opinions to be tested at trial.


Dated: May 13, 2026                              Respectfully submitted,

                                                       */s/ Benjamin C. Deming*
                                                 Benjamin C. Deming
                                                 DNL ZITO
                                                 3232 McKinney Ave. #500
                                                 Dallas, TX 75204

214-799-1145
bdeming@dnlzito.com

Joseph J. Zito
DNL ZITO
1250 Connecticut Avenue, NW, #700
Washington, DC 20036
202-466-3500
jzito@dnlzito.com

*Attorneys for Defendant Technius Ltd.*

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the above and foregoing

document has been served on all parties via the Court's CM/ECF system on May 13, 2026.


_/s/ Benjamin C. Deming_
Benjamin C. Deming